JUNE TERM
1836.

Paca
v.
Dutton.

PACA v. DUTTON.

1. To render a certified copy of a deed, recorded in another State admissible in evidence here, it should appear by the certificate of the clk. in certifiing the official character of the judge, that he is the presiding judge or justice of the court of which he is clk.—therefore, a certificate of the clk. of the county ct. of Hartford co. that A. B. is presiding judge of the 6th judicial district, composed of Baltimore and Hartford cos. is insufficient.

2. Quære. Would the words "duly commissioned and *sworn*" in the final certifit. of the clk. be equivalent to the words of the act of Cong. "duly commisssioned and *qualified*"?

3. The attestation of *two* witnesses is not necessary to a deed of emancipation in Mo. made in pursuance of the act of the Md. legislature, passed in 1752, where the emancipation is to take place *in futuro*.

Statement of the case.

Opinion delivered by McGirk Judge.

Dutton the plaintiff, is a woman of color, suing for freedom. It appears that in the year 1752, the colonial legislature of Maryland, passed an act authorising persons owning negro slaves of a certain description, to set them free under certain restrictions. That on or about the year 1787, one Josias William Dallam owned and possessed the grand mother of the defendant in error, as a slave, and that said Dallam did by a deed under his hand and seal, attested by one witness, and duly recorded, emancipate said grand mother, to take effect in future; and that by said deed the mother of the defendant in error also became free according to the terms of said deed, and the defendant in error also claims by said deed to be free. The defendant in error had a judgment of freedom in the circuit court, and the plaintiff has brought the cause up by writ of error.

On the trial, the plaintiff in that court, offered in evidence a certified copy of the deed of emancipation, which was objected to by the defendant. The act of the Maryland legislature provides that the deed of emancipation shall be recorded in the office of the clk. of the county court where the deed is made, and that a copy of the registry shall be evidence of the fact of emancipation. The first objection made to receiving this copy is, that it is not the best evidence the nature of the case admits of, and that the original alone in this case will suffice. The defendant in error, replies to this, the 1st sec. of the 4th art. of the constitution, which says that "full faith and credit shall be given in each State, to the public acts, records and judicial proceedings of every other State; and the Congress may by general laws, prescribe the maner in which such records and proceedings shall be proved, and the effect thereof;" and also the act of Congress of the 27th

March, 1804, (Ingersol's Digest, 76 and 77) which declares that "from and after the passage, all records and exemplifications of office books, which are or may be kept in any public office of any State, not appertaining to a court, shall be proved or admited in any other court &c. on being authenticated" in a certain way.   The act after some other regulations as to the authentication, proceeds to declare that the said records and exemplifications authenticated as aforesaid, shall have such faith and credit given to them in every court and office within the United States as they have by law or usage in the courts or offices of the State from whence the same are or shall be taken.— It appears to us that there is according to this act of Congress, no room for dispute.   The Maryland act expressly declares that the copy shall be evidence of the fact of manumission; the copy must have the same effect here, if it be duly authenticated.   Let us now proceed to inquire whether the copy is so authenticated, that it can be received in evidence?   There is no objection made to the first certificate of the clerk, by which he testifies that the paper is a perfect copy, the clerk certifies as the clerk of Hartford county court of Maryland; the judge then certifies as follows, to wit:   Maryland, Hartford county, sct.   I Stephen Archer, chief Judge of the sixth judicial district of Maryland, composed of Baltimore and Hartford counties, hereby certify, that the foregoing attestation of Henry Dorsey, clerk of Hartford county court, is in due form and by the proper officer.   Then Henry Dorsey certifies as follows:   I certify that Stephen Archer who has signed the within and foregoing certificate, was at the time of so doing, presiding judge of the sixth judicial district of Maryland, composed of Baltimore and Hartford counties, duly commissioned and sworn.   It is objected by the counsel for Paca, that these certificates do not pursue the act of Congress.   It is argued by Mr. Allen, for the plaintiff in error, that the certificate of the judge, should in itself contain an affirmation that the judge was presiding judge of the county court of Hartford county; and that the certificate of the clerk, as to the official character of the judge, should affirm that the judge is presiding judge of Hartford county court.

It is our opinion that it should appear by the certificate of the clerk when he comes to certify, as to the official character of the judge, that the judge is presiding judge or justice, of the court of which he is clerk.   This has not been done, but the certificate affirms that Archer is presiding judge of the district composed of Baltimore

JUNE TERM
1836.

Paca
v.
Dutton.

Opinion of the court.

To render a certified copy of a deed recorded in another State admissible in evi-

JUNE TERM
1836.

Paca
v.
Dutton.

dence here, it should appear by the certificate of the clk. in certifying the official character of the judge, that he is the presiding judge or justice of the court of which he is clk.—therefore, a certificate of the clk. of the county ct. of Hartford co. that A. B. is presiding judge of the 6th judicial district composed of Baltimore and Hartford cos. is insufficient.

Quære. Would the words "duly commissioned and *sworn*" in the final certfi. of the clk. be equivalent to the words of the act of Cong. "duly commissd. and *qualified*"?

and Hartford counties, without saying he is presiding judge of any court whatever. The act says the certificate of the clerk or keeper of the record, shall be accompanied with a certificate of the clerk, if the certificate as to the clerk, be given by a presiding justice of a court, with a certificate of the clerk that he shall certify that the presiding justice is duly commissioned and qualified. By these papers and by the emancipation act of Maryland, it appears the registry, of which the copy offered is an exemplification, of right should be kept and made by a clerk of a court, and that was the clerk of the county court of Hartford.——What the presiding judge of the district composed of Baltimore and Hartford counties, had to do with the county court of Hartford, we cannot easily see. If, by virtue of judge Archer's being presiding judge of the district, he is presiding judge or rather justice of the county court of Hartford, the style of his certificate should have so declared.

Another objection taken to the final certificate of the clerk is, that it says the judge was duly commissioned and sworn; and the act of congress says the certificate shall say duly commissioned and qualified. It is best to pursue the very words of the act. We are not entirely certain that congress meant by the word qualified, no more than that which is comprehended by the word sworn.

The admission of the copy as evidence was erroneous, and for that, the judgment is reversed; but the counsel on both sides, have expressed a desire to have the opinion of this court on the effect of the deed of emancipation of Dallam, to the ancestor of the petitioner for freedom; we will, as the case is properly before us, proceed to do so.

That part of the act to be considered, declares that when any person shall be possessed of a slave or slaves, who are or shall be of a healthy constitution, sound in mind and body, capable by labor to procure to himself sufficient food and raiment, with other requisite necessaries of life; and not exceeding fifty years of age; such owner being willing and desirous to set free or manumit such slave or slaves, may by writing under his hand and seal, evidenced by two good and sufficient witnesses, at least grant such slave or slaves, his or her freedom; and that any deed or writing, whereby freedom shall be given or granted to any such slave, which shall be intended to take place in future, shall be good to all intents, constitutions and purposes whatever, from the time that such

freedom or manumission is intended to commence by the said deed or writing, so that such deed and writing be not in prejudice of creditors. and that such slave at the time such freedom or manumission shall take place or commence, be not above the age aforesaid, and be able to work and gain a sufficient livelihood and maintenance according to the true intent and meaning of this act, which instrument of writing shall be acknowledged before one justice of the peace, of the county where the person or persons granting such freedom resides, which justice shall endorse on the back of such instrument, the time of the acknowledgment of the party making the same, which he or they or the party concerned, shall cause to be entered among the records of the county court, where the person or persons granting such freedom shall reside, within six months after the date of such instrument. The act then provides for making a copy and declares the same to be evidence of the fact of freedom.

It appears that the deed in question, under which the party claims freedom by reason of her descent from her grand mother, who was freed by the deed, was only attested by one witness. Paca's counsel contend that the deed must be attested by two witnesses. The counsel for the petitioner, contend that the statute provides a mode of manumission for two classes of persons; the first part provides for manumiting those whose freedom is to commence immediately, and in that case requires a deed sealed and attested by two witnesses, and that when this is done, and the deed delivered to the slave, he is free; and that as to those whose freedom is to commence in future, the law seems neither to require a deed nor witnesses, but requires a writing or deed which is to be acknowledged in solemn form before a justice of the peace and to be recorded &c. We are of opinion, the petitioner's counsel are right in their view of the act; if all that part of the statute which precedes the words "and that" were stricken out, yet the balance of the statute would be perfectly intelligible, and no word would or need be lost or expunged, to make the meaning clear and complete; the statute would then read that when any person owns a slave, and is desirous to set him free, the freedom to commence in futuro, the same can be done by a deed or instrument in writing, but the instrument must be acknowledged before a justice of the peace of the county and must be recorded, provided the slave at the time his freedom is to commence, is not over fifty years of age, and is capable by labor to support himself &c. Now all

JUNE TERM
1836.

Paca
v.
Dutton.

The attestation of *two* witnesses is not necessary to a deed of emancipation in Mo. made in pursuance of the act of the Md. legislature, passed in 1752, where the emancipation is to take place *in futuro.*

JUNE TERM
1836.

this can clearly be well made out without any reference whatever to that part of the act which requires a deed under seal to be attested by two witnesses.

So on the other hand, all before the words "and that" may be completely cut off from the balance, and both the sense and object of that part will be complete, and then the case will be made out as to the mode of emancipation in presenti.

So far then as regards the petitioner's right depending on the Maryland statute, our opinion is for the petitioner.

But for the errors aforesaid, the judgment is reversed and the cause remanded for a new trial.